UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JULIAN LOCKHART<br>Plaintiff,<br><br>v.<br><br>SCOTT SEMPLE, et al.<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | PRISONER CASE NO.<br>3:18-cv-1497 (JCH)<br><br><br>NOVEMBER 7, 2018 |

## INITIAL REVIEW ORDER

On September 6, 2018, plaintiff Julian Lockhart ("Lockhart"), an inmate currently confined at Garner Correctional Institution ("Garner") in Newtown, Connecticut, filed a pro se complaint pursuant to section 1983 of title 42 of the United States Code against eight Connecticut Department of Correction ("DOC") employees in their individual and official capacities for violating his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution and for negligence. Complaint ("Compl.") (Doc. No. 1) at 9, ¶ 3, 15, ¶ 15. The eight defendants are Commissioner of Correction Scott Semple, Warden Falcone, Deputy Warden Dilworth, Deputy Warden Kim Jones, Correction Officer Camacho, Correction Officer Hancock, Correction Officer Labby, and Dr. John Doe (unidentified). Id. at 2, ¶ 4–4, ¶ 4, ¶ 11. Lockhart seeks monetary, declaratory, and injunctive relief. Id. at 1, 16. On September 27, Lockhart's Motion to Proceed in forma pauperis was granted. Order (Doc. No. 8). For the following reasons, his Complaint is dismissed without prejudice to amend.

**I.      STANDARD OF REVIEW**

Pursuant to section 1915A of title 28 of the United States Code, this court must review prisoner complaints and dismiss any portion of a complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Although detailed allegations are not required, a complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

**II.     FACTUAL ALLEGATIONS**

DOC policy does not permit inmate access to outdoor recreation during inclement weather.  Compl. at 5, ¶ 1.  There is an outdoor ball field at Garner which inmates can use during the summer and autumn months.  Id.  During the winter, however, inmate recreation is limited to the indoor gymnasium.  Id.

During the winter of 2016, a leak in the roof of the Garner gymnasium caused the linoleum floor to buckle and warp.  Id. at 5, ¶ 2.  Defendants Semple and Falcone ordered the floor to be torn apart and replaced.  Id.  Consequently, the linoleum tiles in

2

the gymnasium were removed, leaving the "tar-like glue" and an uneven surface on the ground. Id. at 5, ¶ 3. Over the next several months, the inmates at Garner, including Lockhart, complained to defendants Labby, Jones, Dilworth, Falcone, and Semple that the use of the gymnasium was restricted and that the ball field was closed for winter, thereby significantly limiting inmate recreation. Id. at 5, ¶ 4.

The defendants soon reopened the gymnasium with the unfinished floor, thereby risking inmate safety. Id. at 6, ¶ 5. They made no efforts to warn Lockhart or any inmates of the risk of using the unrepaired gymnasium. Id. at 6, ¶ 6. The gymnasium floor was eventually replaced with a "poured gypsum material." Id. at 5.

On the morning of May 25, 2017, before that repair, Lockhart injured his left foot while playing basketball in the unfinished gymnasium at Garner. Id. at 10, ¶ 1. He limped over to the sideline where he met with defendant Hancock. Id. at 10, ¶ 2. Hancock asked Lockhart if he needed medical attention, and Lockhart replied in the affirmative. Id. at 10, ¶¶ 3, 4. The two individuals then walked to the medical unit. Id. at 10, ¶ 5. There, Hancock took a photograph of Lockhart's injury and recorded his statement. Id. At 10:00 a.m., a nurse in the medical unit evaluated Lockhart, filled out a medical incident report, and referred Lockhart to a physician for further evaluation. Id. at 10, ¶ 6. The nurse told Lockhart that he might have torn his Achilles tendon. Id. at 11, ¶ 7. Shortly thereafter, Dr. Valletta evaluated Lockhart, confirmed the nurse's diagnosis, and told Lockhart that he would need to go to the UConn Health Center ("UConn") to treat his torn Achilles. Id. at 11, ¶ 8.

3

Later that afternoon, Lockhart was sent to UConn and evaluated by Dr. Doe. Id. at 11, ¶ 10. Doe informed Lockhart that his options were to either undergo surgery to reattach his Achilles or medicate the injury without surgery. Id. at 11, ¶ 11. Lockhart asked Doe to explain the difference between the two options, and Doe assured him that medicating the injury without surgery would ultimately heal the tendon. Id. at 11, ¶¶ 12, 13. Lockhart again, in an attempt to understand Doe, asked if his tendon would heal itself without surgery, and Doe responded affirmatively. Id. at 12, ¶¶ 14, 15. Doe explained that, if Lockhart opts for surgery, he would run the risk of catching an infection. Id. at 12, ¶ 15. Lockhart consulted with his transporting officers, Correction Officers Angel and Bleeker, and asked them for their thoughts on the surgery. Id. at 12, ¶ 16. Both officers stated that they always thought a torn Achilles tendon needed to be reattached but that, if the doctor said that the tendon would heal without surgery, then there was no need to have the operation. Id. at 12, ¶¶ 16, 17. Lockhart ultimately declined surgery. Id. at 13, ¶ 19. Doe then ordered Lockhart to wear a cast on his foot for two weeks, followed by a medical boot. Id. at 13, ¶ 20.

After another doctor and an intern placed a cast on his foot, Lockhart returned to Garner. Id. at 13, ¶ 21. He wore the cast for two weeks, as instructed, and took medication. Id. at 13, ¶ 22. He then returned to UConn where he was given a medical boot to wear for six months and placed on a pain medication regimen. Id. at 13, ¶ 23.

Lockhart wore the medical boot until January 1, 2018. Id. at 13, ¶ 24. When the boot was removed, Lockhart discovered that his tendon did not heal, and he continued to walk with a limp. Id. He also discovered that Dr. Doe had previously performed

4

surgery on a correction officer named Lawlor, who also tore his Achilles tendon while running drills on the Garner gymnasium floor. Id. at 14, ¶ 25.

## III. ANALYSIS

Lockhart is suing Semple, Falcone, Dilworth, Jones, Camacho, Hancock, and Labby for acting with deliberate indifference to his safety, in violation of his Eighth Amendment protection against cruel and unusual punishment, by exposing other inmates and him to the unfinished gymnasium floor at Garner. Compl. at 7, ¶ 1 – 9, ¶ 3. Specifically, he claims that these defendants "knew or should have known of the gym floor being torn up for maintenance and not suitable to play on," but ignored the safety risks created by the unfinished repairs. Id. at 7, ¶ 1 – 8, ¶ 8. Lockhart also claims that these defendants retaliated against him for filing grievances, in violation of his First Amendment right to free speech, and that they are liable for negligence. Id. at 9, ¶¶ 2, 3. He is suing Dr. Doe for acting with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, and denying him due process, in violation of the Fourteenth Amendment, for wrongfully informing him that his ruptured Achilles tendon would heal without surgery. Id. at 15, ¶¶ 15, 16.

### A. Eighth Amendment Deliberate Indifference to Safety

To state a claim for deliberate indifference to safety, in violation of the Eighth Amendment, Lockhart must show first, that the alleged conduct was sufficiently serious and, second, that the defendants acted with a sufficiently culpable state of mind, that is, that they acted with deliberate indifference to inmate health or safety. See Farmer v. Brennan, 511 U.S. 825, 834–835 (1994). Regarding the first requirement, the alleged

5

harm must be objectively serious, and "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities[.]" Id. at 834 (internal quotation marks omitted). Where the claim is based on the official's failure to act, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id.

Regarding the mens rea requirement, the official's acts or omissions must involve "more than mere negligence." Id. at 835. The deliberate indifference standard under the Eighth Amendment requires that "the official knows of and disregards an excessive risk to inmate health or safety[.]" Id. at 837. In other words, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. Thus, to determine whether a prisoner faced an excessive risk of serious harm, courts "look at the facts and circumstances of which the official was aware at the time he acted or failed to act." Hartry v. County of Suffolk, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

In this case, Lockhart claims that the defendants "knew or should have known" about the disrepair of the gymnasium floor at Garner and that it was not suitable for inmate recreation. Compl. at 7, ¶1 – 8, ¶ 8. Although his Complaint may state a plausible negligence claim against the defendants, he has not alleged facts showing that the defendants' actions amounted to deliberate indifference. There are no facts showing that the defendants forced Lockhart and other inmates to recreate in the gymnasium, deliberately delayed the maintenance, or ignored complaints about the

6

risks the unfinished floor posed to inmate safety.  The court will, therefore, dismiss this claim but permit Lockhart an opportunity to amend his Complaint with additional allegations that can plausibly show that the defendants' actions amounted to deliberate indifference.

To the extent that Lockhart seeks to raise a separate negligence claim against the defendants, that claim is barred by section 4-165 of the Connecticut General Statutes.  Section 4-165 bars negligence claims against state officials acting within the scope of their employment.  Miller v. Egan, 265 Conn. 301, 319 (2003).

### B. First Amendment Retaliation

Lockhart next claims that the defendants subjected him to "retaliatory treatment for filing grievances."  Compl. at 9, ¶ 3.  However, he has not alleged any facts showing any retaliatory acts by any defendant.  He only alleges that he filed grievances related to the issues raised in this Complaint and that said grievances were denied.  Id. at 15.

"To prevail on a First Amendment retaliation claim, [a prisoner] must establish (1) that the speech or conduct at issue was protected, (2) that the [official] took adverse action against the [prisoner], and (3) that there was a causal connection between the protected [conduct] and the adverse action."  Holland v. Goord, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted); Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009).  In the prison context, adverse action is objectively defined as "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003).  In order to plausibly allege causation, a prisoner must allege facts that suggest the protected

7

conduct was a substantial or motivating factor in the correctional officer's decision to take some adverse action against him. See Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009).

The Second Circuit has "approach[ed] prisoner claims of retaliation with skepticism and particular care," noting that such claims are "easily fabricated" and that "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001). "Because claims of retaliation are easily fabricated, the courts . . . require that they be supported by specific facts; conclusory statements are not sufficient." Riddick v. Arnone, No. 3:11-CV-631 (SRU), 2012 WL 2716355, at *6 (D. Conn. Jul. 9, 2012); see also Moore v. Peters, 92 F. Supp. 3d 109, 120 (W.D.N.Y. 2015) ("Accordingly, plaintiffs in retaliatory motive cases must plead 'specific and detailed factual allegations which amount to a persuasive case' or 'facts giving rise to a colorable suspicion of retaliation.'") (quoting Johnson v. Eggersdorf, 8 F. App'x 140, 144 (2d Cir. 2001)).

Lockhart's retaliation claim in this case is entirely conclusory. He has not alleged any facts that the defendants acted or failed to act out of retaliation for his decision to file grievances against them. Indeed, he has not even alleged the action which he claims is retaliatory. Therefore, the court dismisses the First Amendment claim with leave to amend.

C. <u>Eighth Amendment Deliberate Indifference to Medical Needs</u>

Lockhart next claims that Dr. Doe violated his Eighth Amendment protection against cruel and unusual punishment by acting with deliberate indifference to his medical needs. Compl. at 15, ¶ 15. Although not clearly stated, the court interprets his claim to be based on Doe's statements that Lockhart's torn Achilles tendon would heal without surgery, which proved to be false.

To state a claim for deliberate indifference to a serious medical need, Lockhart must show both that his medical need was serious and that Doe acted with a sufficiently culpable state of mind. <u>See</u> <u>Smith v. Carpenter</u>, 316 F.3d 178, 184–85 (2d Cir. 2003). There are both objective and subjective components to the deliberate indifference standard. <u>See</u> <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain[.]" <u>See</u> <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, Doe must have been actually aware of a substantial risk that Lockhart would suffer serious harm as a result of his actions or inactions. <u>See</u> <u>Salahuddin v. Goord</u>, 467 F.3d 263, 280–81 (2d Cir. 2006). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. <u>See</u> <u>id.</u> at 280. Nor does a difference of opinion regarding what constitutes an appropriate response and treatment. <u>See</u> <u>Ventura v. Sinha</u>, 379 F. App'x 1, 2–3 (2d Cir. 2010); <u>Chance v. Armstrong</u>, 143 F.3d 698, 703 (2d Cir. 1998).

After review of the allegations, the court concludes that Lockhart's claim against Doe amounts to mere negligence,[1] not deliberate indifference. Lockhart has not plausibly alleged that Doe knew that there was a substantial risk of serious harm from forgoing surgery. See Hathaway, 99 F.3d at 553 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Instead, Lockhart merely alleges that Doe presented two treatment options to Lockhart and explained the risks and benefits of each. Such allegations do not suggest that Doe acted or failed to act with "a conscious disregard of a substantial risk of serious harm." Young-Flynn v. Wright, No. 05 CIV.1488 LAK, 2007 WL 241332, at *15 (S.D.N.Y. Jan. 26, 2007) (internal quotation marks omitted). Nor does Lockhart plausibly allege that Doe acted contrary to accepted medical standards. See Stevens v. Goord, 535 F. Supp. 2d 373, 385 (S.D.N.Y. 2008) ("[M]edical decisions that are contrary to accepted medical standards may exhibit deliberate indifference, because the doctor has based his decision on something other than sound medical judgment.") (internal quotation marks omitted). Although Lockhart alleges that Correction Officers Angel and Bleeker believed that a torn Achilles tendon would only heal with surgery, these Correction Officers are not medical professionals and, therefore, their medical opinions do not tend to prove that Doe acted contrary to

---

[1] To the extent Lockhart seeks to raise a negligence or medical malpractice claim against Doe, his claim is barred by sections 4-160(b) and 4-165 of the Connecticut General Statutes. Lockhart has not indicated whether he has obtained authorization from the state claims commissioner to sue a state official for medical malpractice. See St. Pierre v. Tawanna, No. 3:14-CV-1866 (VAB), 2017 WL 1053838, at *9 (D. Conn. Mar. 20, 2017). Therefore, any negligence or medical malpractice claim against Doe is dismissed with prejudice.

10

established medical standards. Thus, as Lockhart does not plausibly plead the mens rea requirement for deliberate indifference under the Eighth Amendment, the court dismisses without prejudice the Eighth Amendment claim against Doe. See Harding v. Kuhlmann, 588 F. Supp. 1315, 1316 (S.D.N.Y. 1984), aff'd, 762 F.2d 990 (2d Cir. 1985) (dismissing deliberate indifference claim where there was no allegation that "the treatment prescribed was contrary to applicable medical standards"). Lockhart may amend his Complaint with additional allegations that can plausibly show that Doe's actions amounted to deliberate indifference.

    D. Fourteenth Amendment Due Process

Lockhart claims that Doe's actions also amounted to a violation of due process under the Fourteenth Amendment. Compl. at 15, ¶ 15. He does not specify whether he is claiming a procedural due process violation or a substantive due process violation. However, he does not allege that he was deprived of any specific procedural protections and, therefore, the court presumes he is claiming a violation of substantive due process based on Doe's false medical information.

Nevertheless, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claim[ ].'" Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). The Eighth Amendment protects against cruel and unusual punishment, which includes deliberate indifference to a prisoner's medical needs. See Phelps v. Kapnolas, 308 F.3d 180, 185

(2d Cir. 2002) (quoting <u>Farmer</u>, 511 U.S. at 834). Because Lockhart's Fourteenth Amendment claim against Doe is based on the same facts as his Eighth Amendment claim, the court dismisses the Fourteenth Amendment claim with prejudice.

## IV. ORDERS

The Complaint is **DISMISSED** for failure to state a claim upon which relief could be granted under section 1915A. If Lockhart can plausibly allege facts showing that the defendants deliberately disregarded a substantial risk to inmate safety by opening the unfinished gymnasium at Garner and not just that they acted negligently, he may file an amended complaint restating his Eighth Amendment claim for deliberate indifference to safety. He may also restate his Eighth Amendment claim for deliberate indifference to medical needs if he can plausibly allege that Doe consciously disregarded a substantial risk to Lockhart's health in treating Lockhart's torn tendon. Finally, he may restate his First Amendment retaliation claim if he can allege additional facts showing that one or more of the defendants took an action with a retaliatory motive. The Fourteenth Amendment due process claim against Doe is dismissed with prejudice and may not be restated in any amended complaint.

**Failure to submit an amended complaint in accordance with these instructions within thirty (30) days of the date of this Order will result in the dismissal of the case with prejudice.**

**SO ORDERED** this 7th day of November 2018 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge